United States District Court
Southern District of Texas

**ENTERED**

February 04, 2026

Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **LARETTA L. B.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:24-cv-4580** |
| | § | |
| **FRANK BISIGNANO,** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff Laretta L. B. ("Plaintiff") filed this lawsuit against Defendant Frank Bisignano[1] ("Commissioner") seeking review of the denial of benefits under Title XVI of the Social Security Act. (ECF Nos. 1, 13). Pending before the Court[2] is the Commissioner's motion for summary judgment. (ECF No. 15). Plaintiff has also filed an opening brief in support of her suit. (ECF No. 13). Based on a review of the motion, arguments, and relevant law, the Court **RECOMMENDS** Commissioner's Motion for Summary Judgment (ECF No. 15) be **GRANTED**. The Court **FURTHER RECOMMENDS** the

---

[1] Frank Bisignano was sworn in as the Commissioner of Social Security on May 7, 2025. Bisignano is "automatically substituted" as the defendant in this suit. FED. R. CIV. P. 25(d); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

[2] On December 11, 2024, this case was referred to the Undersigned for all purposes pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Federal Rule of Civil Procedure 72. (ECF No. 7).

Commissioner's decision be **AFFIRMED** and the case be **DISMISSED WITH PREJUDICE**.

## I.    Background

Plaintiff filed a claim for supplemental security income on March 7, 2022, alleging disability starting on March 7, 2022.  (ECF No. 8-3 at 20).[3]  Plaintiff's claims were initially denied by the Social Security Administration on January 6, 2023, and again on reconsideration on February 8, 2024.  (*Id.*).  On February 13, 2024, Plaintiff requested a hearing before an Administrative Law Judge. (*Id.*).  On June 20, 2024, Administrative Law Judge David Hebert (the "ALJ") held a telephonic hearing.  (*Id.*).  Plaintiff was represented by counsel at the hearing.  (*Id.*).  Kay S. Gilreath, a vocational expert ("VE"), appeared and testified at the hearing.  (*Id.*).

On July 15, 2024, the ALJ issued a decision, finding Plaintiff not disabled at Step Five.[4]  (*Id.* at 40–42).  At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity since March 7, 2022, the alleged onset date. (*Id.* at 22).  At Step Two, the ALJ found Plaintiff has the following severe

---

[3] The Administrative Record in this case can be found at ECF No. 8.

[4] In considering a disability claim, an ALJ must conduct a five-step evaluation that examines: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from doing any other work.  *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002) (citing 20 C.F.R. § 404.1520).

impairments: "obesity; degenerative disc disease of the lumbar spine; degenerative changes of the right ankle; osteoarthritis and arthralgias of the knees; ventral hernia; irritable bowel syndrome; bipolar disorder; depressive disorder; generalized anxiety disorder; and posttraumatic stress disorder (PTSD) (20 CFR 416.920(c))." (*Id.* at 22–23). At Step Three, the ALJ found Plaintiff: "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)." (*Id.* at 24). The ALJ determined that Plaintiff has the Residual Functional Capacity ("RFC") to:

> perform light work as defined in 20 CFR 416.967(b) except she cannot climb ladders, ropes or scaffolds but she can occasionally climb ramps and stairs; and occasionally stoop, bend, kneel, crawl and crouch. The claimant can occasionally work with or around hazards, dangerous machinery or equipment, and unprotected heights. The claimant can understand, remember and carry out 1-3 step simple, routine and repetitive tasks. The claimant cannot have forced pace, assembly line or production rate jobs. The claimant can occasionally deal with the general public and relate to coworkers.

(*Id.* at 27–28). At Step Four, the ALJ found Plaintiff "has no past relevant work." (*Id.* at 40). At Step Five, the ALJ found there were jobs that existed in significant numbers in the national economy that Plaintiff could perform— such as a housekeeper, price tagger, and clerical router—and therefore

3

Plaintiff was not disabled as defined under the Social Security Act. (*Id.* at 40–41).

Plaintiff appealed to the Appeals Council and the Appeals Council denied Plaintiff's request for review on September 23, 2024. (*Id.* at 7). Thus, the ALJ's decision represents the Commissioner's final decision in the case. *See Sims v. Apfel*, 530 U.S. 103, 106–07 (2000).

## II.   Legal Standard

The Court's review of a final decision of the Commissioner on a Social Security disability claim is exceedingly deferential. *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012). "[R]eview of Social Security disability cases 'is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard.'" *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (quoting *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)).   When the Commissioner's decision is reached by applying improper legal standards, the decision is not supported by substantial evidence. *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept to support a conclusion' and constitutes 'more than a mere scintilla' but 'less than a preponderance' of evidence." *Hardman v. Colvin*, 820 F.3d 142, 147 (5th Cir. 2016) (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)). "'Any findings of fact by the Commissioner

which are supported by substantial evidence are conclusive.'" *Heck v. Colvin*, 674 F. App'x 411, 413 (5th Cir. 2017) (quoting *Taylor*, 706 F.3d at 602).

Even so, judicial review must not be "so obsequious as to be meaningless." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (quotations omitted).  The substantial evidence standard is not a rubber stamp for the Commissioner's decision and involves more than a search for evidence supporting the Commissioner's findings.  *Singletary*, 798 F.2d at 822–23; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).  Rather, a reviewing court must scrutinize the record as a whole, taking into account whatever fairly detracts from the substantiality of evidence supporting the Commissioner's findings. *Singletary*, 798 F.2d at 823.  The Court "'may not reweigh the evidence . . . , nor try the issues *de novo*, nor substitute [its] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.'" *Johnson v. Colvin*, 595 F. App'x 443, 444 (5th Cir. 2015) (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)).

## III.   Discussion

Plaintiff argues the ALJ "improperly rendered a lay interpretation of raw medical evidence in crafting his physical RFC determination, and thus failed to adequately develop the record with opinion evidence."  (ECF No. 13 at 5–11).  Specifically, Plaintiff argues that although the ALJ found Plaintiff's irritable bowel syndrome ("IBS") to be a "severe impairment," none of the

5

medical opinions the ALJ found "partially persuasive"—including those of the state agency medical consultants at the initial and reconsideration levels—accounted for IBS-related functional limitations, and the ALJ rejected the opinion evidence without further developing the record. (*Id.* at 7–8). According to Plaintiff, the ALJ erroneously determined Plaintiff's RFC without medical opinion evidence addressing the functional effects of Plaintiff's impairments. (*Id.* at 8). Plaintiff further asserts that the ALJ failed to build a "logical bridge" between the medical evidence and the RFC, particularly by not assigning environmental limitations that address IBS-related symptoms, such as accomodations for frequent restroom use, excessive breaks, off-task behavior, or absenteeism. (*Id.* at 9–10).

The Commissioner responds that the ALJ properly weighed all medical and nonmedical evidence, including consultative examinations, state agency opinions, treatment records, and Plaintiff's testimony, and reasonably concluded that IBS, while deemed "severe" at Step Two, was conservatively treated and not shown by any medical source to impose additional work-related functional limitations. (ECF No. 15 at 8–11). The Commissioner argues the ALJ adequately explained that Plaintiff's IBS symptoms were manageable with over-the-counter medication and diet, and that consultative examiners and state agency physicians did not assess IBS-related restrictions. (*Id.* at 10–11). The Commissioner further notes Plaintiff's counsel at the hearing declined

6

to question or cross-examine the VE, making additional limitations speculative. (*Id.* at 6, 8, 12). Thus, the dispute centers on whether the ALJ's RFC reflects a permissible synthesis of the evidentiary record under the regulations and Fifth Circuit law, or whether, as Plaintiff argues, the ALJ crossed into impermissible lay interpretation by acknowledging IBS as "severe" yet failing to include corresponding functional limitations or adequately explain their omission. The Court disagrees with Plaintiff and finds the ALJ properly determined Plaintiff's RFC based on all record evidence.

"The RFC is not a medical finding; it is an administrative finding, and the sole responsibility of the ALJ to determine." *Seago v. Kijakazi*, No. 1:21-cv-136, 2022 WL 17853369, at *4 (S.D. Tex. Nov. 15, 2022), *report and recommendation adopted*, No. 1:21-cv-00136, 2022 WL 17852795 (S.D. Tex. Dec. 22, 2022), *aff'd sub nom. Seago v. O'Malley*, 91 F.4th 386 (5th Cir. 2024) (citing *Taylor*, 706 F.3d at 602–03). "This determination is based on the ALJ weighing the evidence, resolving conflicts in the evidence, and creating an RFC consistent with the entirety of the record." *Id.* (citing *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990)). "Although the ALJ is generally tasked with weighing medical opinions and determining a plaintiff's RFC, the ALJ is not permitted to 'draw [her] own medical conclusions from some of the data, without relying on a medical expert's help.'" *Lee v. Comm'r of Soc. Sec.*, No.

4:21-cv-1390, 2022 WL 4490176, at *7 (S.D. Tex. Sept. 27, 2022) (internal citation omitted).

Here, the record contains multiple medical sources addressing Plaintiff's physical condition, including consultative examinations and state agency medical opinions. In particular, two state agency medical consultants—Dr. Patricia Nicol in January 2023 and Dr. Alison Caviness in February 2024– opined that Plaintiff retained the capacity to fully perform "light work;" however, the ALJ found these opinions "partially persuasive" because "based on the totality of the evidence and [Plaintiff's] allegations . . . the record comports with a residual functional capacity for light work *with the additional postural and environment limitations*" included in his RFC determination. (ECF No. 8-3 at 34–35) (emphasis added). In other words, the ALJ declined to adopt either opinion wholesale, explaining that additional postural and environmental limitations were warranted after considering Plaintiff's conservative treatment history (including for IBS), largely benign examination findings, and diagnostic imaging indicating an ability to perform light work. (*Id.* at 35). The ALJ explicitly noted the environmental limitations in his RFC determination "were also assigned to take into account [Plaintiff's] complaints of pain throughout her body, including in her abdomen, which was related to her hernia and irritable bowel syndrome." (*Id.*). Therefore, "[t]he ALJ did not reject entirely all of the medical opinions and independently interpret[] the raw

8

medical data to craft an RFC based solely on his own interpretation of medical data and without any supporting medical opinion[.]" *Hess v. Kijakazi*, No. 22-cv-5305, 2023 WL 8696374, at \*10 (E.D. La. Oct. 20, 2023), *report and recommendation adopted sub nom. Hess v. Soc. Sec. Administration*, No. 22-cv-5305, 2024 WL 1231327 (E.D. La. Mar. 22, 2024).   Rather, "he found the medical opinions somewhat persuasive and relied on them, coupled with other record evidence, to exercise of his responsibility to determine [Plaintiff's] RFC based on all of the evidence of record." *Id.* (concluding ALJ did not improperly use lay interpretation of raw medical data when he imposed additional postural limitations greater than set forth in the state medical consultants' opinions, which he found to be *somewhat persuasive*, when determining claimant's RFC) (emphasis in original).

Plaintiff further argues that the ALJ failed to develop the record because no medical opinion expressly quantified functional limitations arising from Plaintiff's IBS.  (ECF No. 13 at 8–9).  "The absence of such a [medical source] statement, however, does not, in itself, make the record incomplete." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995) (citation omitted).  Rather, the "inquiry focuses upon whether the decision of the ALJ is supported by substantial evidence in the existing record." *Id.*

Here, the record shows that Plaintiff's IBS was treated conservatively with over-the-counter medications (e.g., Miralax), dietary recommendations

(e.g., FODMAP diet),[5] and intermittent prescription medications (e.g., Imodium, Bentyl) during acute episodes. (ECF No. 8-3 at 28–32). Multiple medical providers acknowledged Plaintiff's reports of constipation and diarrhea, yet none imposed work-related functional restrictions attributable to IBS. (*Id.* at 30, 32; *see also* ECF Nos. 8-8 at 236–42; 8-9 at 392–96; 8-10 at 8–10). For instance, the ALJ noted that in December 2022, Plaintiff presented to Dr. Dalton Carter "for a consultative examination and alleged disability due to obesity, hernia, irritable bowel syndrome, and knee pain;" however, the ALJ further noted that Dr. Carter's assessed workplace limitations were "vague" and more tailored to Plaintiff's orthopedic issues (e.g., carpal tunnel syndrome, knee pain). (*Id.* at 30, 37–38). Nonetheless, the ALJ "considered Dr. Carter's exam findings when formulating the residual functional capacity." (*Id.* at 38). Similarly, state agency medical consultants, like Dr. Nalanni Dave, acknowledged Plaintiff's IBS but did not identify functional limitations resulting from the condition. (*Id.* at 32 ("Dr. Dave diagnosed the claimant with obesity, history of irritable bowel syndrome, and history of left hip and back

---

[5] When people say "FODMAP diet," they usually mean a diet low in FODMAP—certain sugars that may cause intestinal distress. This diet is designed to help people with irritable bowel syndrome. FODMAP stands for fermentable oligosaccharides, disaccharides, monosaccharides and polyols, which are short-chain carbohydrates (sugars) that the small intestine absorbs poorly. Some people experience digestive distress after eating them. Symptoms include: Cramping, Diarrhea, Constipation, Stomach bloating, Gas and flatulence. *See* Hazel Marie Galon Veloso, MD, *FODMAP Diet: What You Need to Know*, JOHN HOPKINS MEDICINE, https://www.hopkinsmedicine.org/health/wellness-and-prevention/fodmap-diet-what-you-need-to-know (last visited Feb. 4, 2026).

pain. . . . Notably, she did not render an opinion regarding the claimant's functional limitations.").

Moreover, Plaintiff did not testify at the administrative hearing that IBS-related symptoms—such as frequent restroom use, off-task behavior, or absenteeism—prevented her from working.   The ALJ expressly stated he considered Plaintiff's:

> own testimony and statements, wherein, she admitted she could attend to her personal care, prepare meals for herself and her elderly roommate, babysit a child, perform household chores, care for her pets, shop online, engage in social media, schedule appointments, find directions using the internet, and budget for daily needs and expenses adequately. . . . Hence, after carefully assessing [Plaintiff's] subjective complaints as well as reviewing her medical records, the undersigned finds her allegations are not consistent with the evidence.

(*Id.* at 40).  "The ALJ is not required to address impairments that are based solely on the testimony of a claimant if there is no medical evidence to support a claimant's contentions."  *Carrillo v. Astrue*, No. 08-cv-774, 2009 WL 4667122, at *21 (W.D. Tex. Nov. 30, 2009) (concluding ALJ did not err by failing to address plaintiff's problem with his eye and vision where there was no medical evidence in the record to substantiate plaintiff's testimony).

Viewed as a whole, the record contains substantial evidence supporting the ALJ's finding that Plaintiff retained the capacity to perform a limited range of light work and the corresponding RFC.  While Plaintiff identifies evidence that could arguably support a different conclusion, "[t]he Court may not

reweigh the evidence or substitute its judgment for that of the Commissioner." *R.P. v. Comm'r, Soc. Sec. Admin.*, No. 6:24-cv-55, 2025 WL 1223567, at *2 (N.D. Tex. Apr. 28, 2025) (quoting *Hernandez v. Comm'r of Soc. Sec.*, No. 23-cv-00633, 2024 WL 4126699, at *1 (W.D. Tex. Sep. 5, 2024)).

## IV.   Conclusion

Based on the foregoing, the Court **RECOMMENDS** Commissioner's Motion for Summary Judgment (ECF No. 15) be **GRANTED**.  The Court **FURTHER RECOMMENDS** the Commissioner's decision be **AFFIRMED** and the case be **DISMISSED WITH PREJUDICE**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

**SIGNED** in Houston, Texas on February 4, 2026.

_____
Richard W. Bennett
United States Magistrate Judge

12